## Case No. 4,557.

### EVANS v. CLEVELAND & P. R. CO.

[21 Leg. Int. 29;[1] 2 Pittsb. Rep. 483; 5 Phila. 512; 11 Pittsb. Leg. J. 193.]

Circuit Court, W. D. Pennsylvania. 1864.

John C. Knox, of Philadelphia, for plaintiff.
W. S. C. Otis, of Cleveland, and A. W. Loomis, of Pittsburg, for defendants.

[1] [Reprinted from 21 Leg. Int. 29, by permission.]

 

GRIER, Circuit Justice. First, as to the power of the corporation to make the contract on which this suit is founded. It is not necessary to notice the many metaphysical platitudes to be found in the books, by which corporations were wont to evade responsibility for their acts. Their powers will be strictly construed as between themselves and the state. But modern corporations are but partnerships, where the individuals are too numerous to act in their own names. They may make contracts and bind themselves in their corporate name on any subject necessary to the object of the association. Without noticing the extensive powers given by the act of incorporation, it is plain that a railroad must have power to contract with operatives, to bind themselves to pay money, to raise funds by borrowing and otherwise. It is only when called upon to pay their obligations that the conscience of a corporation (if they can be said to have any,) suggests these astute doubts as to their power to contract. This corporation had given certain shares of stock to the county of Allegheny in exchange for their bonds—a contract which the two corporations were authorized to make. But county bonds are not money, and railroad companies must have money to make their roads. Whatever the wealth and respectability of the citizens of that county may have been, and their plenary ability to pay the bonds in question, those who purchased them might well doubt their punctuality. But a few years before this transaction, the executive officers of the county neglected or refused to collect taxes sufficient to pay the current expenses of the county, and with an utter disregard of the laws of the land they flooded the country with an illegal and irredeemable currency. The citizens who were thus relieved from paying their taxes by this scheme kept the currency afloat by common consent, without regard to the law. However unjust the suspicion might have been as regards very many of the respectable citizens of the county, a purchaser of their bonds might well doubt the punctuality of the payment of the interest, if not dishonest attempts at repudiation of the principal. Hence if the railroad desired to raise money by putting those bonds, into the market, it was their interest to give them all possible credit. That for this purpose, they might make this contract of guarantee, cannot be doubted, if they could make any binding contract at all.

What is the meaning of this contract? It is to "guarantee to the bearer of the bond the punctual payment of the interest thereon as it may fall due at the place and time specified." The intention of the parties should govern in all contracts. There is no magic in any particular word used which might be so defined by grammarians or judges as to make the contract an absurdity. These bonds were payable to bearer, and passed by mere delivery. They required no assignment to satisfy the requirements of any state statute, or to enable the holder to sue on them in his own name. They are a species of commercial securities introduced into this country. They are construed according to the commercial usages of the world. By the custom of all civilized nations, and for the benefit of commerce, confirmed by judicial decisions of every nation and state, they have received such construction as will most enhance their commercial value. It is vain for any judge or court to stand up, with Blackstone in hand, and attempt to arrest the will of all the rest of the world by the application of obsolete doctrines to a new species of security. There is no reason, founded in policy or morality, why a state or other corporation may not bind themselves to pay to bearer both principal and interest, by instruments under seal. To construe the contract of defendants to be a mere warranty of the solvency of the county of Allegheny would be no better than a stultification of the parties to it. What the parties evidently meant was an additional security for punctuality of payment of the interest on the day and at the place mentioned in the bond. If the county has failed to have funds ready at the time and place, then the covenant of defendants is broken, and an action lies thereon.

It is not necessary to notice the various decisions of the Pennsylvania courts as to their construction of such a covenant. The contract is made in Ohio, to be executed in New York, where the law is not hampered by judicial decisions which would compel a construction of a contract directly contrary to the plain intention of the parties. The contract is "with —— or bearer." If necessary the plaintiff might insert his name in the blank. He does not sue as assignee of the bond, under the peculiar statute law of the state of Pennsylvania, or any other state. Plaintiff declares on an original contract made with himself. No demand or notice is necessary to create the liability of the defendants under this contract. The courts of the United States do not require the common law as received in each state to be proved like those of China or Japan. Their statute books and judicial precedents are received as evidence without special plea or proof of witnesses. The plaintiff is entitled to judgment on the demurrer. But the defendant has leave to withdraw his demurrer, and to plead issuably if he sees fit. Otherwise let judgment be entered for plaintiff.